**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00543-RM-MEH

ERICK ROGELIO NIETO BAQUERA,

    Petitioner,

v.

JOHN LONGSHORE, Field Office Director, U.S. Immigration and Customs Enforcement,
JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security,
JOHN MORTON, Director, U.S. Immigration and Customs Enforcement, and
ERIC HOLDER, Attorney General, United States of America,

    Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application of Petitioner Erick Rogelio Nieto Baquera ("Mr. Nieto") for a Writ of Habeas Corpus filed March 1, 2013. (ECF No. 1.) A hearing was held on Mr. Nieto's Application on May 23, 2013. Mr. Nieto is a lawful permanent resident ("LPR") of the United States who was arrested and detained in 2013 by immigration authorities because of a 2003 criminal conviction involving possession of a controlled substance. Mr. Nieto seeks an individualized hearing and bond determination pending removal proceedings in immigration court. For the reasons stated below, the Court grants Mr. Nieto's request for relief and directs that an Immigration Judge conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) within fourteen days from the date of the entry of this Order.[1]

---

[1] Mr. Nieto's Motion for a Preliminary Injunction filed March 29, 2013 is also pending. (ECF No. 12.) With this Order, that Motion is moot.

## I.     LEGAL STANDARD

### 1.     Jurisdiction and Venue

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless…[h]e is in custody in violation of the Constitution or laws or treaties of the United States." A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are met: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Mr. Nieto is currently in the custody of immigration officials in Aurora, Colorado. "[F]or core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined."). This Court has subject matter jurisdiction under § 2241 because Mr. Nieto is detained within its jurisdiction in the custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and asserts both that his mandatory detention is not statutorily authorized and that it violates the Due Process Clause of the Fifth Amendment of the Constitution. Venue is proper because Mr. Nieto is in custody in Aurora, Colorado, which is within the geographical boundaries of the District of Colorado.

### 2.     Exhaustion

Ordinarily, petitioners are required to exhaust their administrative remedies prior to seeking a writ under §2241. *See Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir.1986) (per

curiam). Respondents have not pursued the argument that Mr. Nieto's claims are barred because he failed to exhaust his administrative remedies. Moreover, exhaustion of remedies is not required if exhaustion would be futile. *Goodwin v. State of Okl.*, 923 F.2d 156, 157 (10th Cir. 1991). Here, Mr. Nieto seeks a hearing and bond determination pursuant to 8 U.S.C. §1226(a). Although such a determination was requested in immigration court, the immigration judge ruled simply that there was "no jurisdiction" and did not consider the matter further. (ECF No. 1, Ex. 3.) Mr. Nieto did not appeal that decision, because in his view, the Board of Immigration Appeals ("BIA") had already "predetermined the issue before it." (ECF No. 1 ¶ 24 (quoting *Bell v. Wiley*, 481 F. Supp. 2d 1168, 1172 (D. Colo. 2007)).) In light of the fact that the BIA had previously ruled that aliens in Mr. Nieto's circumstances are subject to mandatory detention under 8 U.S.C. §1226(c) and not entitled to individualized bond determinations, *In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001) ("*Rojas*"), the Court agrees that any appeal by Mr. Nieto would have been futile.

### 3. Statutory Framework

Title 8 of the United States Code Section 1226 governs the pre-removal detention of an alien. Section 1226(a) authorizes immigration officials to arrest and to detain or release an alien pending a decision on whether the alien is to be removed from the United States. An alien has the right under § 1226(a) to a hearing before an immigration judge to determine whether he or she should be released on bond during the removal process. There is an exception to this broad authority given to immigration officials to release an alien on bond following a hearing as §1226(a), by its plain terms, applies in all circumstances "[e]xcept as provided in subsection (c) of this section." This exception, subsection (c), authorizes mandatory detention of certain aliens

without a bond hearing. And the mandatory detention authorized by subsection (c) itself contains an extremely limited exception in witness protection circumstances not applicable in this case.

Section 1226(c) provides in part:

Detention of criminal aliens

   (1) Custody

   The Attorney General shall take into custody any alien who - -

      (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

      (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

      (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

      (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

   when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

   (2) Release

   The Attorney General may release an alien described in paragraph (1) only [under limited circumstances related to witness protection].

8 U.S.C. § 1226(c).

## II.   FACTS AND PROCEDURAL HISTORY

Mr. Nieto is a native and citizen of Mexico and an LPR of the United States. (ECF No. 1 ¶ 1.) He has lived in the United States since he was an 11 month old infant, and first became an LPR in 1996 at the age of thirteen. (*Id.* ¶ 17.) In March of 2003, Mr. Nieto pled guilty in the

Colorado state courts to criminal possession of a controlled substance (one of the enumerated crimes in §1226 (c)) and was sentenced to four years of probation and 48 hours of community service. (*Id.* at ¶ 18.) He was neither arrested nor detained by immigration authorities upon his "release" on probation.

Mr. Nieto successfully completed his probation in April 2007. (*Id.* at ¶ 19.) Since his 2003 conviction, he has had no other difficulties with the law. Mr. Nieto has created and partnered in a furniture moving business, formed ties to Colorado, and established a long-term relationship with a woman he married after his arrest in this matter. (*Id.* at ¶ 56; ECF. No. 26 at 12.)

In 2006, while on probation, Mr. Nieto applied for renewal of his LPR status as required every ten years. Immigration renewed his LPR status and issued him a new LPR card valid through October 20, 2016. (ECF. No. 1, Ex. 1.) In connection with this renewal process, immigration officials became aware of Mr. Nieto's 2003 conviction. Their response was to mail to Mr. Nieto some form of letter inquiring as to whether he would be "amenable to removal proceedings." (Hearing Transcript May 23, 2013, at 10:04:56-10:05:26.) For reasons unrevealed by the record, the letter mailed to Mr. Nieto was never picked up by him. For the next seven years, there is no indication that immigration did anything to contact or arrest Mr. Nieto until January 2013. According to the Assistant United States Attorney, it simply "took a long time before they took steps to actually detain him." (*Id.* at 10:06:04-10:06:08.)

Mr. Nieto has been detained since January 18, 2013. (ECF No. 1 ¶ 6.) An immigration judge held a bond hearing for Mr. Nieto on January 29, 2013, but ruled that the immigration

5

court lacked jurisdiction to adjudicate bond. (ECF No. 1, Ex. 3.) As a result, Mr. Nieto remains detained pending issuance of a final order of removal.

### III.     ANALYSIS

This case turns on the application of 8 U.S.C. § 1226 to Mr. Nieto. The parties dispute the meaning of 8 U.S.C. § 1226, which generally authorizes immigration officials to detain or release aliens pending their removal proceedings based on an individualized determination of danger and flight potential at a bond hearing. Subsection (c) of this statute presents an exception to this individualized release authority, identifying a class of criminal aliens who are subject to mandatory detention. Mr. Nieto argues that this exception does not apply to him because ICE failed to arrest and detain him "when" he was "released," as he argues is required by subsection (c), and instead detained him a decade later. He also argues that his due process rights under the Fifth Amendment to the U.S. Constitution are being violated by his continued detention. Respondents argue that the "when…released" provision of the statute is ambiguous, and that this Court should, under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*"), defer to the BIA's interpretation of §1226 as set forth in *Rojas*. Respondents alternatively argue that the "when . . . released" language comprises a nonbinding deadline that does not compromise the government's ability to detain Mr. Nieto under §1226(c), even when that detention is seriously delayed. As to the constitutional claim, Respondents argue that Mr. Nieto's argument is foreclosed by the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003) ("*Demore*").

For the reasons detailed below, this Court holds that Mr. Nieto is not subject to mandatory detention under the provisions of § 1226(c), and thus is entitled to a bond hearing

under § 1226(a). This decision is solely focused on the narrow legal question of whether Mr. Nieto is subject to mandatory detention without a bond hearing under 1226(c) or is entitled to a bond hearing under §1226(a) during the pendency of his removal proceedings. The outcome of such a hearing, as well as the broader issue of his ultimate deportation, are matters outside of this Court's jurisdictional authority. Because this matter is decided in Mr. Nieto's favor on statutory grounds, the Court need not decide on the basis of the due process issue raised by Mr. Nieto.

### A. The Plain Language of the Statute

The first step in the Court's analysis must be to look to the statute itself and clear congressional intent. *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1147 (10th Cir. 2011), *as corrected* (Mar. 22, 2011). If the statute is silent or ambiguous with respect to the disputed issue, then a *Chevron* analysis is necessary. "If congressional intent is clear from the statutory language, the inquiry is over," and the Court "must give effect to the unambiguously expressed intent of Congress." *Lee v. Mukasey,* 527 F.3d 1103, 1106 (10th Cir. 2008) (citations omitted). Here, the plain language of the statute requires immigration officials to detain an alien at the time the alien is released from custody in order for mandatory detention to apply.

Respondents argue that the statute is ambiguous because "when" could mean immediately, or it could mean "in the event of" release. (ECF No. 21 at 1, 7). The Court disagrees. Had Congress intended that certain aliens be arrested and detained "in the event of" release, any number of more obvious terms would have accomplished that result, including "once," "after," or "if." Further, if "when . . . released" means "anytime in the event of . . . release," the overall command of subsection (c) becomes strained – by Respondents' reading, that subsection would command that immigration authorities "shall" take aliens into custody at

some unspecified time that could be years or decades after their release. Contrary to what Respondents contend, "when" connotes a temporal correlation between release and subsequent detention.[2]

The statute, read as a whole, gives immigration officials the power to detain and release aliens, except for a limited class of criminals who shall be mandatorily detained "when . . . released." The "when . . . released" phrase is a direction to the authorities that certain dangerous aliens should be continuously detained from the time of release from custody in qualifying criminal cases through their removal proceedings. That language means that this exception no longer applies to Mr. Nieto, given that ten years have lapsed since his "release." Therefore, Mr. Nieto's fate is now governed by subsection (a), which does not mean he will be released – only that he is now entitled to a bond hearing.

### B. There Is No Binding Precedent

Neither the Supreme Court nor the Tenth Circuit has ruled on the issue before the Court today. There is no binding precedent to direct the Court's analysis. However, numerous district courts have addressed this issue. By this Order, this Court adopts the "plain language" approach and outcome of the clear majority of the district courts that have ruled on this issue[3], including

---

[2] It is not necessary for this Court to determine how immediate the detention must be – whether continuous custody is required, or some standard of reasonableness should be applied to a brief gap in custody – in order for mandatory detention to apply. The ten years that elapsed between Mr. Nieto's "release" and his ICE arrest makes clear that he was not detained "when . . . released."

[3] *E.g.*, *Deluis-Morelos v. ICE Field Office Director*, No. 12CV–1905JLR, 2013 WL 1914390 (W.D. Wash. May 8, 2013); *Castillo v. ICE Field Office Director*, No. C12–502 –MJP–MAT, 2012 WL 5511716 (W.D. Wash. Nov. 14, 2012); *Bogarin-Flores v. Napolitano*, Civ. No. 12CV0399 JAH WMC, 2012 WL 3283287 (S.D.Cal. Aug. 10, 2012); *Rosario v. Prindle*, No. 11–217, 2011 WL 6942560 (E.D.Ky. Nov. 28, 2011), *adopted by* 2012 WL 12920 (E.D.Ky. Jan. 4, 2012); *Rianto v. Holder*, No. CV–11–0137–PHX–FJM, 2011 WL 3489613 (D. Ariz. Aug. 9, 2011); *Louisaire v. Muller*, 758 F. Supp. 2d 229 (S.D.N.Y. 2010); *Monestime v. Reilly*, 704 F. Supp. 2d 453 (S.D.N.Y. 2010); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 778 (E.D. Mich. 2010); *Scarlett v. U.S. Dep't of Homeland Sec.*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009); *Bromfield v. Clark*, No. C06-0757-JCC2006, 2007 WL 527511 (W.D. Wash. Feb. 14, 2007); *Zabadi v. Chertoff*, No. C05-03335, 2005 WL 3157377 (N.D. Cal. Nov. 22, 2005).

courts within the Tenth Circuit. *See Valdez v. Terry*, 874 F. Supp. 2d 1262, 1276 (D.N.M. 2012) (holding that mandatory detention did not apply to alien and ordering an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)); *Ortiz v. Holder*, No. 2:11CV1146 DAK, 2012 WL 893154, at *3 (D. Utah Mar. 14, 2012) ("[T]his court joins the vast majority of federal courts that have addressed this issue . . . and finds that, because Petitioner was not taken into immigration custody when he was released by state officials from his qualifying offense(s), § 1226(c) does not apply, and he is entitled to an individualized bond hearing with an Immigration Judge.").

To date, and just recently, only two circuits – the Third and Fourth Circuits – have addressed the issue before this Court. Although each, based on reasoning wholly different from the other, concluded that mandatory detention could continue to apply to aliens arrested and detained years after their release, neither opinion is convincing to this Court.

In *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012) ("*Hosh*"), the Fourth Circuit denied a bond hearing to an alien first arrested three years after his release on probation for a criminal offense based on its conclusion that the word "when" is ambiguous and on its consequent deferral to the BIA construction of the statute pursuant to *Chevron* analysis. However, *Chevron* requires deference to an agency's interpretation of *specific* ambiguous terms, and the BIA in *Rojas* did not conclude that "when" can mean "anytime." To the contrary, the BIA concluded that "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement." *Rojas*, at 122. The BIA then went on through strained reasoning to conclude that the "when released" language was not an integral part of the "description" of those subject to mandatory detention under §1226(c)(2). Presumably because of the inadequacy of the analysis in *Rojas* and the dearth of analysis in *Hosh* itself, *Hosh* has had

little persuasive impact beyond the Fourth Circuit, where it is binding precedent. *See, e.g.*, *Bogarin-Flores v. Napolitano,* Civ. No. 12CV0399 JAH WMC, 2012 WL 3283287, at *3 (S.D.Cal. Aug. 10, 2012) ("The Fourth Circuit . . . found *Rojas* was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision . . . . This Court finds that the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody"). As detailed above, this Court has read the statute in full and concluded that the word "when" is unambiguous, so no *Chevron* deference is required, *Hosh* notwithstanding.

In *Sylvain v. Atty Gen. of the United States*, 714 F.3d 150 (3rd Cir. 2013) ("*Sylvain*"), the Third Circuit found against the petitioner, but based on very different reasoning from that employed in *Hosh.* The Third Circuit concluded that immigration officials do not lose their authority to impose mandatory detention under subsection (c)(2) if they fail to act and arrest a criminal alien under (c)(1) at the time the alien is released. The Third Circuit so held because it viewed the "when . . . released" language as not creating a mandatory deadline. Respondents urge the Court to adopt the Third Circuit's reasoning, arguing that "even if § 1226(c) requires immediacy . . . ICE still has the authority to detain Petitioner without a bail hearing." (ECF No. 21 at 5.)

The Third Circuit's holding in *Sylvain* was based on Supreme Court and Tenth Circuit cases dealing with very different statutes. In *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990) ("*Montalvo-Murillo*"), the Supreme Court interpreted the Bail Reform Act as not requiring the immediate release of a criminal defendant as a sanction for a court's failure to hold

10

a detention hearing until thirteen days after that defendant's first appearance. In *United States v. Dolan*, 571 F.3d 1022 (10th Cir. 2009), *aff'd*, 130 S.Ct. 2533 (2010) ("*Dolan*"), the Tenth Circuit interpreted the Mandatory Victims Restitution Act as not requiring that a court forego an order of restitution where that court did not hold a restitution hearing within 90 days of sentencing. The Court finds that these cases do not compel the conclusion reached by the Third Circuit in *Sylvain*.

Both *Montalvo-Murillo* and *Dolan* dealt with laws containing a time sensitive directive to government officials in the context of a statute that was silent as to the consequence of a failure to adhere to the time requirements established by Congress. In the case of the Bail Reform Act (*Montalvo-Murillo*), the statute required that a bond hearing be held "immediately upon the person's first appearance. . . ." 18 U.S.C. §3142(f). In the Mandatory Victims Restitution Act (*Dolan*), Congress required that a restitution hearing be held within a time frame "not to exceed 90 days after sentencing." 18 U.S.C. §3664(d)(5). Neither statute contained language suggesting an outcome in the event that the court failed to discharge its obligations in a timely manner. In other words, the statutes contained directives surrounded by relative silence as to the consequence should the deadline not be met. Faced with this, both the Supreme Court and the Tenth Circuit were reluctant to create a coercive sanction, especially one which penalized the public by causing the loss of a valuable right created by Congress – the right to have dangerous criminals detained in the case of the Bail Reform Act and the right to restitution under the Mandatory Victims Restitution Act. *See Montalvo-Murillo* at 716-20; *Dolan* at 1027-28.[4]

---

[4] The Tenth Circuit *Dolan* case was affirmed by the Supreme Court in a full opinion, but *Sylvain* did not discuss the Supreme Court's reasoning in *Dolan* and instead the Third Circuit relied upon the lower court opinion. Interestingly, in the Supreme Court opinion, the Court notes that there are situations in which deadlines will pose jurisdictional limits on government power:

11

The statute at issue in this matter is structurally different. Section 1226 controls the release and detention of aliens. Subsection (a) permits the detention or release of an alien on bond following an individualized hearing "[e]xcept as provided in subsection (c) of this section . . . ." Subsection (c)(1) directs that certain aliens be taken into custody "when . . . released." And subsection (c)(2) provides that those "described in paragraph (1)" may be released only in limited circumstances involving witness protection. Rather than having a statutory directive surrounded by relative silence, the matter at hand seems fairly straightforward as a matter of statutory construction. There is a general rule of individualized hearings – 1226(a). There is a singular exception to the general rule – 1226(c). By § 1226(c)(2), the exception permits those described in § 1226(c)(1) – that is, those arrested "when released" – to be mandatorily detained without a hearing. If authorities fail to arrest an alien when released, but choose to wait ten years, then the alien is not one described in §1226(c)(1) and thus not within the class subject to mandatory detention under §1226(c)(2). In other words, the alien is not within the exception to §1226(a). And if the exception to §1226(a) does not apply, then the general rule must.[5]

---

> [T]he question before us concerns the consequences of the missed deadline where, as here, the statute does not specify them. In answering this kind of question, this Court has looked to statutory language, to the relevant context, and to what they reveal about the purposes that a time limit is designed to serve. The Court's answers have varied depending upon the particular statute and time limit at issue. Sometimes we have found that the statute in question imposes a 'jurisdictional' condition upon, for example, a court's authority to hear a case, to consider pleadings, or to act upon motions that a party seeks to file.

*Dolan v. United States*, 130 S. Ct. 2533, 2538 (2010). In other words, there is no one-size-fits-all to the question of what happens to the government's power to act when a statutorily imposed deadline is missed. Here, the Court looks to the "statutory language" and "the relevant context" to conclude that because ICE did not detain Mr. Nieto "when [he was] released," mandatory detention no longer applies.

[5] *Sylvain* attempted to avoid this outcome by noting that "subsection (a) does not explicitly invoke subsection (c)'s time requirement." *Sylvain* at 160. There is no requirement that Congress explicitly invoke the time requirement included in subsection (c). Section 1226(a), by its plain terms, applies in all circumstances "[e]xcept as provided in subsection (c) of this section." The language used by Congress is clear and the structure of the statute reads naturally. By *Sylvain*'s logic, however, Congress would have to have written the statute as follows: "except as provided in subsection (c) of this section, *specifically including compliance with the time restrictions set forth in subsection (c)(1)*".

There is no judicially created sanction – coercive or otherwise – necessary to entitle Mr. Nieto to a bond hearing. The structure of §1226 as a whole yields that result. Thus, whatever appropriate reticence there is to the creation of judicial overlays on congressional language is simply not at issue in this matter.

Finally, requiring the government to give Mr. Nieto a bond hearing does not rob the public of the statutory benefits of protection from dangerous criminal aliens. The individualized bond hearing required by this Order is a far cry from mandating release (as was the demand in *Montalvo-Murillo*), and from the complete loss of the right to impose restitution (as was sought in *Dolan*). The outcome here necessitates a procedural change, not a substantive loss. The government still has the authority to detain Mr. Nieto, it simply must provide him with an individualized bond hearing and determine the issue of release based on his actual circumstances.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Mr. Nieto is not subject to the mandatory detention required by § 1226(c). Mr. Nieto's pre-removal detention is instead governed by 8 U.S.C. § 1226(a). Accordingly, it is

**ORDERED THAT:**

1. Mr. Nieto's Application on writ of habeas corpus is GRANTED;
2. ICE shall provide Mr. Nieto with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2) within 14 days of the date of the entry of this Order;
3. All other pending motions are DENIED as moot; and

    4. The Clerk of the Court is DIRECTED to close this case.  Each party shall bear his own costs and attorney's fees.

Dated this 4th day of June, 2013.

                                            BY THE COURT:

                                            _____
                                            Raymond P. Moore
                                            United States District Judge